No. 2024-1322

# United States Court of Appeals for the Federal Circuit

MEMORYWEB, LLC,

*Appellant*

v.

SAMSUNG ELECTRONICS CO., LTD.,

*Appellee.*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board, No. PGR2022-00034

## APPELLEE'S CORRECTED RESPONSE BRIEF

Lauren A. Degnan
Michael J. McKeon
Christopher Dryer
Irene Hwang
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, S.W.
Suite 1000
Washington, DC 20024
Tel: (202) 783-5070
degnan@fr.com

Timothy Rawson
**FISH & RICHARDSON P.C.**
12860 El Camino Real
Ste. 400
San Diego, CA 92130
Tel: (858) 678-5070

August 14, 2024

*Attorneys for Appellee*
*Samsung Electronics Co., Ltd.*

**<u>Representative Claim 1 of U.S. Patent No. 11,163,823</u>**

1. A method comprising:

causing an interface to display a search-filter view, the search-filter view permitting a user to filter a plurality of digital files based on one or more criteria;

responsive to a first input within the search-filter view, causing the interface to display a people view including a first image associated with a first person and a second image associated with a second person;

responsive to an input that is indicative of a selection associated with the first person, causing a first person view to be displayed on the interface, the first person view including a first digital file associated with the first person;

responsive to an input that is indicative of a selection associated with the first digital file, causing a first detail view to be displayed on the interface, the first detail view including (i) the first digital file, (ii) first information associated with the first digital file and (iii) a first map image associated with the first digital file, the first digital file having a first size in the first person view and a second size in the first detail view, wherein the second size is greater than the first size;

responsive to an input that is indicative of a selection associated with the second person, causing a second person view to be displayed on the interface, the second person view including a second digital file associated with the second person;

responsive to an input that is indicative of a selection associated with the second digital file, causing a second detail view to be displayed on the interface, the second detail view including (i) the second digital file, (ii) second information associated with the second digital file and (iii) a second map image associated with the second digital file; and

responsive to a second input within the search-filter view, causing the interface to display a locations view including a first name associated with a first location, and a second name associated with a second location;

responsive to an input that is indicative of a selection associated with the first location, causing a first set of digital files to be displayed on the interface, each digital file in the first set of digital files being associated with the first location; and

responsive to an input that is indicative of a selection associated with the second location, causing a second set of digital files to be displayed on the interface, each digital file in the second set of digital files being associated with the second location.

Appx178.

# CERTIFICATE OF INTEREST

The undersigned counsel certifies that the following responses are correct:

1. The full name of every entity represented in this case by the counsel filing this certificate:

   **Samsung Electronics Co., Ltd.**

2. For each entity, the name of every real party in interest, if that entity is not the real party in interest:

   **Samsung Electronics America, Inc.**

3. For each entity, that entity's parent corporation(s) and every publicly held corporation that owns ten percent (10%) or more of its stock:

   **Samsung Electronics Co., Ltd.**

4. The names of all law firms, partners, and associates that have not entered an appearance in the appeal, and (a) appeared for the entity in the lower tribunal, or (b) are expected to appear for the entity in this court are:

   **Fish & Richardson P.C.: Christopher O. Green, Hyun Jin In, Jeremy J. Monaldo, W. Karl Renner**

5. Identification of whether there are any related or prior cases, other than the originating case number(s), that meet the criteria under Federal Circuit Rule 47.5:

   **Yes. *See* Notice of Related Case Information [Docket 31]**

6. All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases:

   **N/A**

Dated: August 9, 2024

*/s/ Christopher Dryer*
Christopher Dryer

# TABLE OF CONTENTS


CERTIFICATE OF INTEREST ........ i

TABLE OF AUTHORITIES ........ iv

STATEMENT OF RELATED CASES ........ vi

COUNTER-STATEMENT OF THE ISSUES ........ 1

INTRODUCTION ........ 2

COUNTER-STATEMENT OF THE CASE ........ 3

I. The ’823 Patent ........ 3

II. The Prior Art Discloses the Allegedly-Novel Sorting and Filtering ........ 8

III. The PGR Proceedings ........ 11

A. Samsung’s PGR Petition Demonstrates the ’823 Patent’s Obviousness ........ 11

B. MemoryWeb Attempts To Distinguish the Prior Art Based on the Number of Clicks To Display a “Location View” ........ 13

C. Samsung’s Reply Shows That MemoryWeb’s Claim Construction and Interpretation of the Prior Art Are Both Incorrect ........ 15

D. The Board Finds That the Prior Art Discloses the “Location View” Limitation Even Under MemoryWeb’s Narrow Claim Construction ........ 16

SUMMARY OF THE ARGUMENT ........ 17

ARGUMENT ........ 19

I. Standard of Review ........ 19

II. Substantial Evidence Supports the Board’s Obviousness Determination ........ 19

A. Substantial Evidence Supports the Board's Factual Finding That the Prior Art Satisfies MemoryWeb's Narrow Interpretation of "Responsive To" ........ 19

B. Competing Interpretations of the Prior Art Do Not Invoke the Inherency Doctrine ........ 23

C. The Board Did Not Abuse Its Discretion in Considering Samsung's Reply Arguments ........ 28

III. The Board Did Not Err by Declining To Construe "Responsive To" ........ 29

IV. The Court Can Independently Affirm by Rejecting MemoryWeb's Incorrect Construction of "Responsive To" ........ 31

A. MemoryWeb's Construction Is Wrong ........ 31

B. The Prior Art Satisfies the Correct Construction ........ 37

V. A Remand Is Required Even Under MemoryWeb's Narrow Interpretations of the Claims and the Prior Art ........ 38

CONCLUSION ........ 39

CERTIFICATE OF SERVICE AND FILING ........ 41

CERTIFICATE OF COMPLIANCE ........ 42

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*,
949 F.3d 1366 (Fed. Cir. 2020) ....................19

*Axonics, Inc. v. Medtronic, Inc.*,
75 F.4th 1374 (Fed. Cir. 2023) ....................28

*Click-To-Call Techs., LP v. Ingenio, Inc.*,
899 F.3d 1321 (Fed. Cir. 2018) ....................31, 38

*Eko Brands, LLC v. Adrian Rivera Maynez Enters.*,
946 F.3d 1367 (Fed. Cir. 2020) ....................35, 36

*Genzyme Therapeutic Prods. Ltd. P'ship v. Biomarin Pharm. Inc.*,
825 F.3d 1360 (Fed. Cir. 2016) ....................30

*Graham v. John Deere Co.*,
383 U.S. 1 (1966)....................19, 23, 24, 39

*Hewlett-Packard Co. v. Mustek Sys., Inc.*,
340 F.3d 1314 (Fed. Cir. 2003) ....................26

*Icon Health & Fitness, Inc. v. Strava, Inc.*,
849 F.3d 1034 (Fed. Cir. 2017) ....................38

*Idemitsu Kosan Co. v. SFC Co.*,
870 F.3d 1376 (Fed. Cir. 2017) ....................23

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge, Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016) ....................19

*Keyes v. Slayter*,
146 F.2d 653 (CCPA 1944) ....................26

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)....................18, 23, 27, 39

*LBT IP I LLC v. Apple Inc.*,
No. 2022-1613, 2023 WL 3914920 (Fed. Cir. June 9, 2023)....................24, 25

*LKQ Corp. v. GM Glob. Tech. Operations LLC*,
102 F.4th 1280 (Fed. Cir. 2024) ....................27

*In re Mouttet*,
686 F.3d 1322 (Fed. Cir. 2012) ....................19

*Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co. Matal*,
868 F.3d 1013 (Fed. Cir. 2017) ....................23, 30

*Packers Plus Energy Servs. Inc. v. Baker Hughes Oilfield Operations, LLC*,
773 Fed. Appx. 1083 (Fed. Cir. 2019)....................31

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ....................36

*Redline Detection, LLC v. Star Envirotech, Inc.*,
811 F.3d 435 (Fed. Cir. 2015) ....................22

*Sisvel Int'l S.A. v. Sierra Wireless, Inc.*,
81 F.4th 1231 (Fed. Cir. 2023) ....................32, 33

*Smithkline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ....................28

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
200 F.3d 795 (Fed. Cir. 1999) ....................37

*Weber, Inc. v. Provisur Techs., Inc.*,
92 F.4th 1059 (Fed. Cir. 2024) ....................19, 20

*Yorkey v. Diab*,
601 F.3d 1279 (Fed. Cir. 2010) ....................19, 26

**Statutes**

35 U.S. Code § 103 ....................23

**Other Authorities**

Fed. Cir. R. 28(j) ....................31

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, the undersigned counsel states that no other appeal from the same post grant review was previously before this or any other appellate court. The undersigned counsel is aware of the following pending cases that may directly affect or be directly affected by this Court's decision in the pending appeal:

- *MemoryWeb, LLC v. Samsung Elecs. Co*, 3:22-cv-03776 (N.D. Cal.)
- *MemoryWeb, LLC v. Samsung Elecs. Co.*, 24-1315, -1316 (Fed. Cir.)
- *MemoryWeb, LLC v. Unified Patents, LLC*, 24-1328 (Fed. Cir.)
- *Apple Inc. v. MemoryWeb, LLC*, 23-2361 et al. (Fed. Cir.)

## COUNTER-STATEMENT OF THE ISSUES

1. The Board resolved a quintessential dispute over the content of the prior art, finding that it expressly describes a system satisfying even MemoryWeb's construction of "responsive to." Was the Board right not to impose an inherency framework where Samsung never argued inherency and the Board agreed that the prior art explicitly teaches the relevant feature?

2. MemoryWeb never disputes that the prior art satisfies Samsung's interpretation of "responsive to," and neither the term's plain meaning nor any intrinsic evidence supports narrowing these open-ended claims to require "direct" causation that precludes any additional user input. Given the absence of any factual dispute under Samsung's interpretation, can this Court independently affirm by rejecting MemoryWeb's narrow construction as a matter of law?

# INTRODUCTION

In a detailed final written decision, the Board thoroughly analyzed and considered the arguments from both parties, weighed the evidence, and concluded that all of the challenged claims would have been obvious. On appeal, MemoryWeb challenges neither the Board's factual findings, which are supported by substantial evidence, nor its ultimate conclusion of obviousness. Instead, MemoryWeb attempts to impose a rigid inherency framework upon a routine factual dispute about the prior art. But inherency does not apply merely because the parties disagreed over the prior art's teachings—if it did, nearly every obviousness case would become an inherency case, contrary to *KSR*'s flexible approach. Samsung's expert testimony and the other evidence the Board considered constitute substantial evidence supporting the Board's findings regarding the content of the prior art.

Further, MemoryWeb's inherency theory is relevant only if this Court also adopts MemoryWeb's narrow construction of "responsive to" as precluding additional user actions—an issue also raised in companion appeal nos. 24-1315, -1316. MemoryWeb does not argue that inherency was required under Samsung's construction or otherwise dispute that the prior art satisfies Samsung's construction of "responsive to." Nothing in the '823 patent supports MemoryWeb's narrow reading of "responsive to." Thus, the Court can affirm by either finding inherency

inapplicable or by rejecting MemoryWeb's construction.

## COUNTER-STATEMENT OF THE CASE

### I. The '823 Patent

U.S. Patent No. 11,163,823 ("the '823 patent") describes a purported invention related to digital file management, particularly photographs. Appx105 (Title); Appx161 (1:17-21). As the myriad references cited on the '823 patent's face illustrate, this field was crowded and well-developed by the patent's earliest possible priority date, June 9, 2011—about two decades after digital cameras' introduction to consumers, and over a decade after the arrival of mobile phones with cameras. Appx106; Appx321; Appx987.

The '823 patent states that "[p]rior to . . . digital photography, people tended to share photos by displaying printed copies in frames and albums," often with "significant details (people, location, event, etc.) to preserve the memory of that particular occasion" written on the back. Appx161 (1:23-30). It asserts that "[w]hat is needed to complement the widespread availability of digital files is a medium that allows people to organize, view, preserve and share these files with all the memory details captured, connected and vivified via an interactive interface." *Id.* (1:56-60).

The '823 patent's purported invention is based on "associating digital tags with digital files" (i.e., photos or videos) and using the tags to store, organize, and

display the files. Appx105 (Abstract); Appx161 (1:56-2:16). The ’823 patent’s claims recite a “search-filter view,” *see, e.g.*, Appx178 (35:2-5), which the patent illustrates in Figure 18:

FIG. 18




Appx128; Appx162 (3:26-27). The “search filter view” permits a user to filter and display files based on criteria such as “Collections,” “People,” and “Locations.” Appx142-144 (Figs. 32-34)); Appx171 (22:37-56). A user can select the “People” tab to display a “People Application View” that “display[s] all the people that were created within the user’s Application,” as the top of Figure 32 shows:




Appx142 (Fig. 32); Appx171 (22:37-51). Upon further selection, the system displays a "single-person view," as shown in the bottom of Figure 32. *See id.*

A user can also select the "Locations" tab to cause the interface to display a "Location Application View," which "display[s] all the locations that were created within the user's application" as Figure 34 shows:

FIG. 34




Appx144; Appx172 (23:61-67, 24:1-32). The specification also describes two other types of locations views with maps showing places where photos were taken—one using pins (shown in Figure 5), and another using thumbnail images (shown in Figure 41).

**FIG. 5**



**FIG. 41**




Appx115 (Fig. 5); Appx151 (Fig. 41). From the view shown in Figure 41, the user can opt to view locations as a list. Appx175 (29:34-40).

The below excerpt of claim 1 of the ’863 patent is representative with the

limitation at issue (the "locations view" limitation) emphasized:

> 1. A method comprising:
>
> causing an interface to display a search-filter view, the search-filter view permitting a user to filter a plurality of digital files based on one or more criteria;
>
> responsive to a first input within the search-filter view, causing the interface to display a people view including a first image associated with a first person and a second image associated with a second person;
>
> . . .
>
> ***responsive to a second input within the search-filter view, causing the interface to display a locations view including a first name associated with a first location, and a second name associated with a second location***;
>
> responsive to an input that is indicative of a selection associated with the first location, causing a first set of digital files to be displayed on the interface, each digital file in the first set of digital files being associated with the first location; and
>
> . . . .

Appx178 (35:2-54).[1]

## II. The Prior Art Discloses the Allegedly-Novel Sorting and Filtering

Samsung's post grant review ("PGR") petition ("Petition") identifies two prior art books—Pogue (Appx1091-1477) and Engst (Appx1478-1719)—which both describe the same software, iPhoto '09. Appx322. As these books show,

[1] As claim 1 is fifty-four lines long, only the limitations relevant to this appeal are reproduced here. All emphasis herein is added unless noted otherwise.

iPhoto '09 includes a user interface for displaying and organizing photos that allows a user to filter photos by "Faces" or "Places," for example. Appx1195; Appx1001-1002 (¶ 74). Pogue's Figure 4-3 (left) and Engst's Figure 4.2 (right) show iPhone '09's search filter view interface when filtered for Faces:







**Figure 4.2** Click Faces in the source pane to display the Faces corkboard.

Appx329 (annotating Appx1199); Appx1552.

iPhone '09 also has different "locations" views. One locations view displays a map with pins in each location where photos were taken (Pogue Figure 4-15), and another locations view displays photographs associated with each location (Pogue Figure 4-16):




***Figure 4-15:*** *Click the globe icon to see your photo locations in World view. Red pins mark every place on the map where you've got geotagged photos. Point to a pin to see the name of the location, and click the arrow next to it to see the photos themselves.*




***Figure 4-16:*** *It's like iTunes for pictures! Click the Browser button in the iPhoto toolbar (circled here) to leave World view and go to a more text-based place.*

*The Browser view in iPhoto sorts your photo sets by country, state/province, town, and even down to a landmark, making it easy to pull out just the Biloxi photos from your national tour of America's vanishing lighthouses.*

Appx1214 (Figure 4-15), Appx1216 (Figure 4-16).

## III. The PGR Proceedings

### A. Samsung's PGR Petition Demonstrates the '823 Patent's Obviousness

Samsung's Petition asserts that Pogue and Engst render all claims of the '823 patent obvious. Appx317.[2] The Petition includes both an overview of iPhoto '09 as described in the references and a limitation-by-limitation mapping that expressly incorporates the overview. Appx322-326; *see also* Appx322 nn.5-6; Appx327-403.

Samsung's Petition identifies Pogue's Figure 4-3 as an example of the claimed search-filter view, showing the ability to filter images based on multiple criteria, including "Events," "Faces," and "Places." Appx329 (citing Appx1108; Appx1011-1012). For the "responsive to a first input within the search-filter view . . ." limitation, Samsung explained that Pogue and Engst show that iPhoto '09 displays "a people view" that is "responsive to" a user's selection of the "Faces" tab, Appx333-334 (citing Appx1108; Appx1518), annotating Engst's Figure 4.2 as disclosing the claimed functionality:

[2] Samsung also relied on two additional references for the limitations of certain dependent claims. Appx317. Those references are not relevant to the appeal.




Appx334 (citing Appx1552).

For the "location view" limitation—the only limitation disputed on appeal—Samsung explained that iPhoto '09 allows a user to select the "Places" tab (i.e., the "second input"), causing it to display the Browser view (i.e., the claimed "locations view"), including the first and second name/location. Appx349-350. The Petition annotates Pogue's Figure 4-16 to illustrate this functionality, specifically highlighting the Browser button on the bottom toolbar that allows a user to toggle between browsing photos or viewing a map:




*Id.* (citing Appx1216; Appx1032-1033 (¶¶ 105-106)). The Petition does not allege that the locations view limitation is "inherent" in the prior art. *Id.*

### B. MemoryWeb Attempts To Distinguish the Prior Art Based on the Number of Clicks To Display a "Location View"

In its Patent Owner's Response, MemoryWeb argued that selecting the "Places" tab ***always*** causes the iPhoto '09 software to display the World view (the claimed "map view") shown in Pogue's Figure 4-15. Appx3528-3530.




Appx1214.

MemoryWeb's argument relied on a statement in Pogue that explains how to access the Browser view: "'[c]lick the Browser button in the iPhoto toolbar bar . . . to leave World view and go to a more text-based place.'" Appx3529 (quoting Appx1216). According to MemoryWeb, iPhoto '09 requires a user to (1) select the "Places" tab within the search-filter view, which would necessarily cause the locations "map view" above to display, and (2) select the Browser button to display the claimed Browser "locations view" including a first name/location and a second name/location. Appx3530-3531. MemoryWeb also argued that "responsive to" requires a direct cause-and-effect relationship between the "second input" and "display [of a] locations view"—with no additional user actions. Appx3512-3516; Appx3530-3531. Thus, MemoryWeb argued, the "Browser

view" is not displayed "responsive to" selecting the "Places" tab because the user supposedly must then also click the Browser button. Appx3530-3531.

### C. Samsung's Reply Shows That MemoryWeb's Claim Construction and Interpretation of the Prior Art Are Both Incorrect

In its Reply, Samsung disputed both MemoryWeb's cramped claim construction and its erroneous reading of the prior art. First, Samsung (1) noted that MemoryWeb's construction of "responsive to," requiring a "direct causal connection," rewrites the claim language as "***directly*** responsive to" and precludes ***any*** additional user actions, and (2) explained that this construction is overly narrow because it conflicts with the '823 patent's teachings. Appx4011-4012. Under the correct interpretation, Samsung explained, even if "going from the search-filter view in the sequence above to the locations view requires two separate clicks . . . , the display of the locations view is nonetheless 'responsive to' the selection of the 'Places' tab in the search-filter view." Appx4023.

Second, Samsung showed that, contrary to MemoryWeb's assertion, the "map view" is ***not*** always shown after selecting the "Places" tab in iPhoto '09's search filter view. Appx4023-4024. Instead, as Samsung's expert Dr. Philip Greenspun explained and as Engst explicitly teaches, selecting the "Places" tab directly leads to the display of ***either*** the Browser locations view ***or*** the World locations view, depending on which corresponding button, Browser or World view, the user had previously selected. Appx4024 (citing Appx3634-3635; Appx1560;

Appx4044-4045 (¶¶ 16-17)). Samsung noted that Engst explicitly teaches this functionality by explaining that the selection of the "World View button" or the "Browser View button" in the "View control" toolbar impacts what happens when one clicks "Places" in the source pane:

> **To view a map of photo locations:**
>
> - Click Places in the source pane and make sure the World View button (the one with the globe) is selected in the View control at the left side of the toolbar (**Figure 5.2**).
> - While viewing the Information dialog for photos that have geotags, click the little arrow next to Show in Places to jump to a zoomed-in map view in Places.
>
> **To browse through photo locations:**
>
> - Click Places in the source pane and make sure the Browser View button (it has four little rectangles in it) is selected in the View control in the toolbar.
>
>   iPhoto shows the hierarchical location browser (**Figure 5.3**).

Appx4025 (citing Appx1560 (annotated)). Thus, even under MemoryWeb's overly narrow interpretation of "responsive to," iPhoto '09, as described in Pogue and Engst, still satisfies the claim language when a user presses the Browser button before selecting "Places." *See id.*

### D. The Board Finds That the Prior Art Discloses the "Location View" Limitation Even Under MemoryWeb's Narrow Claim Construction

The Board determined that all claims of the '823 patent would have been obvious. Appx102. Although the Board noted the parties' disagreement about the

meaning of "responsive to," it did not need to resolve the dispute because it found that the prior art discloses that limitation even under MemoryWeb's restrictive interpretation. Appx74.

The Board found that the "evidence of record" shows that a skilled artisan "would understand that iPhoto, as described by Pogue, and corroborated by Engst, does not default to showing the World view as Patent Owner contends, but that selecting the 'Places' tab on the source pane can directly lead to either the 'Locations view' (Browser view window shown in Pogue 4-16) or the 'Locations view (map)' (World view window shown in Pogue 4-15)." Appx75. The Board credited Dr. Greenspun's testimony about a skilled artisan's interpretation of Pogue and Engst's teachings and found that the evidence shows that MemoryWeb's argument that the prior art "'does ***not*** disclose causing the display of the Browser View (alleged locations view) responsive to selecting the Places tab in the source pane to the left (alleged second input)' is incorrect." Appx75 (citing Appx3538).

## **SUMMARY OF THE ARGUMENT**

Rather than involving inherency, this case involves the Board's straightforward resolution of competing arguments about the content of the prior art. Substantial evidence supports the Board's dispositive factual findings, which render inherency inapplicable.

MemoryWeb's contrary approach would incorrectly transform almost every obviousness case into an inherency case, imposing precisely the type of rigid rule *KSR* forbids. Samsung never argued inherency or that any limitation was merely implied. Instead, Samsung made straightforward arguments about what Pogue and Engst explicitly disclose and how a skilled artisan would understand their teachings, which were supported by expert testimony that the Board credited. The Board adopted Samsung's reading of the prior art, finding that iPhoto '09, as described by Pogue and Engst, works in two different known and predictable ways, one of which explicitly satisfies even MemoryWeb's construction. That is more than enough for obviousness.

Because the Board found the claims obvious even under MemoryWeb's interpretation, it was not necessary for it to engage in claim construction, as MemoryWeb itself admitted during the PGR. In any event, MemoryWeb's narrow construction of "responsive to" as precluding additional user actions is incorrect, providing an independent basis for affirmance. Nothing in the '823 patent supports such a radical departure from the plain and ordinary meaning of "responsive to." Further, because MemoryWeb does not dispute that the prior art satisfies the locations view limitation under Samsung's plain-meaning interpretation, this Court can independently affirm by rejecting MemoryWeb's narrowing construction.

# ARGUMENT

## I. Standard of Review

Obviousness is a legal conclusion based on underlying factual findings. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). The scope and content of the prior art is one such question of fact, *Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1366, 1373 (Fed. Cir. 2020), which this Court reviews for substantial evidence, *e.g.*, *Intelligent Bio-Systems, Inc. v. Illumina Cambridge, Ltd.*, 821 F.3d 1359, 1366 (Fed. Cir. 2016). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Mouttet*, 686 F.3d 1322, 1331 (Fed. Cir. 2012) (citing *Consol. Edison Co. v. Nat'l Labor Rels. Bd.*, 305 U.S. 197, 229-30 (1938)). The Court also defers to the Board's findings about the credibility of expert witnesses. *Yorkey v. Diab*, 601 F.3d 1279, 1284 (Fed. Cir. 2010). Claim construction based entirely on intrinsic evidence is a question of law this Court reviews de novo. *Weber, Inc. v. Provisur Techs., Inc.*, 92 F.4th 1059, 1062 (Fed. Cir. 2024).

## II. Substantial Evidence Supports the Board's Obviousness Determination

### A. Substantial Evidence Supports the Board's Factual Finding That the Prior Art Satisfies MemoryWeb's Narrow Interpretation of "Responsive To"

Despite MemoryWeb's contortions attempting to make this appeal about inherency, it is a typical obviousness case, where the Board's underlying factual

findings resolving a dispute over the content of the prior art are dispositive. Samsung offered one interpretation of the prior art: that iPhoto ’09 will display the Browser locations view directly in response to a user clicking the “Places” tab on the source pane when the Browser button is already selected on the toolbar. Appx322-326; Appx349-350; Appx4023-4025. MemoryWeb offered a different interpretation: that iPhoto ’09 instead always requires two clicks to access the Browser locations view—first clicking the “Places” tab to view the World view (“map view”), and from there clicking the Browser button. Appx3528-3531.

The Board carefully considered the arguments and evidence and found that “[t]he weight of the evidence shows that” MemoryWeb’s interpretation of the prior art “is incorrect.” Appx74-75. Instead, the Board adopted Samsung’s interpretation that “selecting the ‘Places’ tab on the source pane can directly lead to ***either***” of iPhoto ’09’s location views. *Id.* (citing Appx3634-3635 (128:12-131:6); Appx4044-4045 (¶¶ 16-17); Appx1214).

Substantial evidence supports the Board’s resolution of that fact dispute, including Dr. Greenspun’s testimony, Appx4044-4045, Pogue’s disclosure that a user should click the World view icon (which looks like a globe) to get to the “map view,” Appx1214, and Engst’s disclosure that whether the “map view” or Browser view is displayed when the user click’s the “Places” tab depends on which button (“World View button” or “Browser View button”) is selected on the toolbar:

**To view a map of photo locations:**

- Click Places in the source pane and make sure the World View button (the one with the globe) is selected in the View control at the left side of the toolbar (**Figure 5.2**).
- While viewing the Information dialog for photos that have geotags, click the little arrow next to Show in Places to jump to a zoomed-in map view in Places.

**To browse through photo locations:**

- Click Places in the source pane and make sure the Browser View button (it has four little rectangles in it) is selected in the View control in the toolbar.
  iPhoto shows the hierarchical location browser (**Figure 5.3**).

Appx4025 (citing Appx1560 (annotated)).

Dr. Greenspun testified that "Engst very clearly discloses that selecting 'Places' can directly lead to either the map view or the locations view, depending on which of the two corresponding buttons . . . was previously selected by the user." Appx4044 (¶ 16). He further explained that Engst "explicitly" discloses to a skilled artisan that, in iPhoto '09, "whatever mode you were in is the mode that you get back to. So if you were in world, you come back to world view to see faces, and if you were in browser view, you would come back browser view." Appx3634-3635 (129:12-131:6). The Board specifically credited Dr. Greenspun's testimony, "which provides a reasoned and supported explanation of the teachings of Pogue and Engst and how they would be understood by a person of ordinary skill in the art." Appx75.

Further, Pogue's disclosure about clicking the "World View button" to launch the "map view" shows the error in MemoryWeb's argument that the language accompanying Pogue's Figure 4-16 (instructing the user to click the Browser button to see the Browser view) means the display always defaults to the World view. Pogue simply provides instructions on two modes of iPhoto 09's operation and how to access both the World view (clicking the "World View button") or the Browser view (clicking the "Browser View button") in the event that the user is in a different view. *See* Appx1214; Appx1216; Appx4045 (¶ 17). Additionally, Engst explicitly states that the "World View button" should be clicked "if necessary." Appx1564. Thus, Engst acknowledges that there will be instances in which the system does not default to showing the World view. Appx4045 (¶ 17).

Other than incorrectly arguing that the Board should have applied the standard for inherency, MemoryWeb does not contest on appeal that substantial evidence supports this factual finding. At most, MemoryWeb argues that its alternative reading of the prior art is "plausible." Bl.Br. 23. Samsung does not agree that MemoryWeb's reading is plausible, but even if it were, the Court "will not find the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative." *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 449 (Fed. Cir. 2015)

(quoting *In re Jolley*, 308 F.3d 1317, 1320 (Fed. Cir. 2002)). Indeed, weighing the evidence and resolving factual disputes over the content of the prior art is "precisely what the Board is supposed to do" in its factfinding role. *Idemitsu Kosan Co. v. SFC Co.*, 870 F.3d 1376, 1381 (Fed. Cir. 2017).

Accordingly, this Court should not "reweigh the evidence the Board used to make its determination." *Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co. Matal*, 868 F.3d 1013, 1017 (Fed. Cir. 2017). Instead, MemoryWeb's arguments must be judged with the Board's factual findings about the content of the prior art taken as established facts.

### B. Competing Interpretations of the Prior Art Do Not Invoke the Inherency Doctrine

MemoryWeb's sweeping suggestion (Bl.Br. 20) that any dispute over "what a skilled artisan would understand" from the prior art must be judged under the rigid confines of inherency is wrong.

Section 103 of the Patent Act prevents the Patent Office from issuing a patent when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 399 (2007). Thus, how a skilled artisan would understand the prior art is an essential factual determination in every obviousness case. *See Graham*, 383 U.S. at 17 (requiring "the scope and content

of the prior art . . . to be determined"). The Board's finding that Dr. Greenspun's testimony "provides a reasoned and supported explanation of the teachings of Pogue and Engst and how they would be understood by a person of ordinary skill in the art," Appx75, was not only proper, but an essential part of its obviousness analysis under *Graham*. *Id.*

MemoryWeb urges this Court to view the prior art through the lens of inherency based on a flawed application of *LBT IP I LLC v. Apple Inc*., No. 2022-1613, 2023 WL 3914920, at *1 (Fed. Cir. June 9, 2023) (nonprecedential). *See* Bl.Br. 20. In *LBT*, it was "undisputed" that the prior art did ***not*** explicitly disclose the limitation at issue, and the petitioner's expert "repeatedly used qualifying language such as 'presumably,' 'maybe,' and 'might'" when describing what skilled artisan would understand about the reference. 2023 WL 3914920, at *3. The Court thus held that the petitioner's argument was "substantively one of inherency" based on the particular way the petitioner and its expert framed their arguments. *Id.* It did not—and could not—establish a rigid new rule under which every routine dispute over what "a skilled artisan would understand" the prior art to disclose must be judged according to the inherency doctrine. *Id.*

Here, unlike in *LBT*, Samsung argued, and the Board agreed, that Pogue and Engst explicitly disclose the pertinent limitation. Appx74-75. Samsung's expert testified, and the Board found, that displaying the browser locations view after

selecting "Places" was not merely plausible, but ***will*** result as one of two finite and known outcomes, depending on which of the "Browser View button" or the "World View button" was previously selected. *Id.* Thus, the Board did not rely on testimony that the prior art only "possibly" satisfies the challenged limitation in finding the claims obvious, and *LBT* has no bearing on this case.

In attempting to create the illusion that Samsung argued, or the Board found, that the locations view limitation was only possibly met by the prior art, MemoryWeb ignores Samsung's argument and the Board's decision. The Board did not find that Samsung's interpretation of the prior art was merely "plausible" but instead found that Samsung's interpretation of the prior art was correct. *See* Appx75 (rejecting MemoryWeb's argument about what the prior art disclosed as "incorrect"). The only reference to Samsung's interpretation being merely "plausible" was an admission by ***MemoryWeb's own expert*** who could not refute Samsung's interpretation. Appx73 (citing Appx4189-4190). MemoryWeb's expert's inability to dispute Samsung's interpretation of the prior art does not transform Samsung's or the Board's analysis into one of inherency.

MemoryWeb seizes on Dr. Greenspun's testimony that selecting the "Places" tab "***can*** directly lead to either" locations view, Bl.Br. 22 (citing Appx75 (original emphasis)); yet, in context, Dr. Greenspun was clear that the Browser view ***will*** be displayed in response to the user's selecting the "Places" tab ***if the***

***"Browser View button" is selected***. Appx4044-4045 (¶¶ 16-17) ("Engst very clearly discloses that selecting 'Places' can directly lead to either the map view or the locations view, depending on which of the two corresponding buttons (*i.e.*, the World View button or the Browser View button) was previously selected by the user."). Thus, his reference to "can" merely reflects that the prior art discloses ***two*** capabilities instead of one. Such functionality in the software does not render one of the two disclosed capabilities nonobvious. *See Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1326 (Fed. Cir. 2003) ("Just as an accused product that sometimes, but not always, embodies a claimed method nonetheless infringes, a prior art product that sometimes, but not always, embodies a claimed method ***nonetheless teaches that aspect of the invention***." (internal citation and quotation marks omitted)); *Keyes v. Slayter*, 146 F.2d 653, 656 (CCPA 1944) ("Slayter et al. have disclosed two ways of making the thing, and certainly it cannot be said that by disclosing two ways they have not disclosed one.").

MemoryWeb also incorrectly argues that Dr. Greenspun merely "speculated" in his first deposition, Bl.Br. 21, but the Board found that Dr. Greenspun's opinions were credible and supported by Engst's explicit teachings. Appx74-75. As factfinder, the Board was free to disagree with MemoryWeb's characterization and credit his opinions. *Yorkey*, 601 F.3d at 1284.

Samsung's Petition sets forth why iPhoto '09 (as disclosed in Pogue and

Engst) describes displaying the claimed "locations view" "responsive to" a second input—selection of the "Places" tab in the source pane. Appx349-350. After MemoryWeb raised its narrow construction of "responsive to," Samsung further argued that Engst "explicitly and unambiguously" describes how iPhoto '09 will display either a World view or Browser view (the claimed "locations view") depending on which corresponding button was previously selected when the user clicked on "Places." Appx4025 (citing Appx1560). Those are not inherency arguments, but arguments about the explicit content of the prior art.

Indeed, taking MemoryWeb's argument to its logical conclusion would upend settled obviousness law. That is, if every factual dispute over the prior art's content invoked inherency, then virtually every obviousness case would become an inherency case. Such an unprecedented approach would impose "a rigid rule that limits the obviousness inquiry," which "is inconsistent with the Supreme Court's general guidance in *KSR*." *LKQ Corp. v. GM Glob. Tech. Operations LLC*, 102 F.4th 1280, 1294 (Fed. Cir. 2024) (en banc) (quoting *KSR*, 550 U.S. at 419). Obviousness is instead an "expansive and flexible" inquiry—indeed, one which itself "cannot be confined" to "the explicit content" of the prior art. *KSR*, 550 U.S. at 415, 419. Especially here, where the Board found the limitation at issue explicitly disclosed, the Court should reject MemoryWeb's attempt to shoehorn this case into the inherency doctrine.

### C. The Board Did Not Abuse Its Discretion in Considering Samsung's Reply Arguments

MemoryWeb's opening brief does not directly challenge the Board's consideration of Samsung's reply arguments, thus forfeiting the issue. On appeal, MemoryWeb's only reference to the reply arguments being "improper" is in the background section of its blue brief, where MemoryWeb is describing its own arguments to the Board. Bl.Br. 15-16. In the blue brief's argument section, MemoryWeb asserts in passing that Samsung's Petition relies on only Pogue for the locations view limitation, but notably does not argue that the Board erred in considering Samsung's reply arguments based on Engst. *See* Bl.Br. 20-21. As a result, MemoryWeb has forfeited any argument that the Board abused its discretion by considering the arguments Samsung raised in its reply and cannot now ask this Court to disregard those arguments or Engst's teachings. *Smithkline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived.").

In any event, contrary to MemoryWeb's suggestion, Samsung's reply arguments based on Engst were proper. "[A] petitioner is entitled to respond to new arguments made in a patent owner response." *Axonics, Inc. v. Medtronic, Inc.*, 75 F.4th 1374, 1380 (Fed. Cir. 2023). "The rules provide that the petitioner may 'respond to arguments raised in the corresponding opposition, patent owner preliminary response, or patent owner response.'" *Id.* (quoting 37 C.F.R.

§ 42.23(b)). Petitioners "'may introduce new evidence after the petition stage if the evidence is a legitimate reply to evidence introduced by the patent owner.'" *Id.* (quoting *Apple Inc. v. Andrea Elecs. Corp.*, 949 F.3d 697, 707 (Fed. Cir. 2020)).

Because MemoryWeb did not present its narrow claim construction until its Patent Owner's Response, Samsung's first opportunity to show that the prior art satisfies it was in Samsung's Reply. Moreover, Samsung's reply arguments did not change the obviousness theory presented in the Petition, but merely provided more evidence rebutting MemoryWeb's incorrect interpretation of Pogue—i.e., Engst's explicit teaching "that selecting 'Places' leads directly to either the map view or the locations view, depending on which of the two corresponding buttons (i.e., the World View button or the Browser View button) was previously selected by the user." Appx4024. As such, Samsung's reply arguments were proper and the Board did not abuse its discretion in considering them.

## III. The Board Did Not Err by Declining To Construe "Responsive To"

The Board also applied MemoryWeb's overly narrow interpretation of "responsive to"—precluding additional user actions—and ***still*** found that the challenged claims would have been obvious. Appx74. Given that finding, there was no need for the Board to construe the claims. Further, MemoryWeb disputes that factual finding only by mischaracterizing the issue as inherency, which is wrong for the reasons already discussed above.

The Board must construe disputed terms only "to the extent necessary to resolve the controversy." *Nidec*, 868 F.3d at 1017 (citing *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)) (finding no error in Board's decision not to construe claim terms where the more restrictive construction was satisfied). As in *Nidec*, the Board's factual findings establish obviousness under either party's construction. Appx74-75. Thus, the Board properly found claim construction unnecessary.

Notably, MemoryWeb agreed in its Patent Owner Response that "the claims should be afforded their plain and ordinary meaning," and "offer[ed] a discussion of the plain meaning of certain terms and phrases" only "***in the event the Board determines that is necessary*** to resolve Petitioner's patentability challenges." Appx3512. Although MemoryWeb asked the Board to construe this term in its Sur-reply, Appx4770, at the Oral Hearing, MemoryWeb's counsel reversed course and agreed that construing "responsive to" was not required "to reach the right outcome for this particular claim," Appx14 (quoting Appx5254 (27:13-15)). The Board noted MemoryWeb's concession at the Oral Hearing in its Final Written Decision, Appx14, and it was entitled to consider that concession in its decision not to construe the claim language. *See, e.g., Genzyme Therapeutic Prods. Ltd. P'ship v. Biomarin Pharm. Inc.*, 825 F.3d 1360, 1368 (Fed. Cir. 2016) (affirming obviousness determination and considering patent owner's concession at oral

argument). The Board thus did not err by not construing "responsive to" and applying MemoryWeb's narrower construction to resolve the dispute.

## IV. The Court Can Independently Affirm by Rejecting MemoryWeb's Incorrect Construction of "Responsive To"

### A. MemoryWeb's Construction Is Wrong

All MemoryWeb's arguments on appeal depend on this Court's accepting its narrow interpretation of "responsive to."[3] Thus, although the Board's factual finding under MemoryWeb's own construction should resolve this appeal, *see supra*, the Court can alternatively affirm by determining that MemoryWeb's construction is incorrect. *Click-To-Call Techs., LP v. Ingenio, Inc.*, 899 F.3d 1321, 1336 (Fed. Cir. 2018) (explaining that the Court may "'affirm the Board on grounds other than those relied upon in rendering its decision, when upholding the Board's decision does not depend upon making a determination of fact not previously made by the Board'" (quoting *Killip v. Office of Pers. Mgmt.*, 991 F.2d 1564, 1568-69 (Fed. Cir. 1993))). Here, because no additional factfinding is needed to affirm the finding of unpatentability based on the correct construction of "responsive to," the Court can affirm on this alternative ground. *See Packers Plus*

[3] Pursuant to Federal Circuit Rule 28(j), Samsung notes that this claim construction issue is briefed in consolidated companion case Nos. 24-1315, -1316, which involves genealogically-related patents having a common written description and figures to the '823 patent. The sections addressing this issue are not entirely duplicative between the cases, although there is significant overlap in the arguments.

*Energy Servs. Inc. v. Baker Hughes Oilfield Operations, LLC*, 773 Fed. Appx. 1083, 1088 (Fed. Cir. 2019) ("[W]here the issues raised do not require us to find facts in the first instance, we have previously considered alternative grounds to support a Board decision." (citing *Click-To-Call Techs.*, 899 F.3d at 1336)).

MemoryWeb's construction requires a "***direct*** cause-effect relationship between (1) a second input within the search-filter view and (2) causing the interface to display a locations view." Bl.Br. 25. The true dispute, however, is whether "responsive to" permits additional "user actions" such as "additional clicks or scrolls." Appx14. Because nothing in the '823 patent precludes additional user actions, MemoryWeb's construction is wrong.

At the outset, this "***direct*** cause-effect relationship" is not the plain meaning of "responsive to." Under MemoryWeb's interpretation, one person's mailing a letter in reply to a friend would not be "responsive to" the friend's writing that person a letter because the friend not only wrote the letter but put it in an envelope, affixed a stamp, and mailed the envelope containing the letter. As MemoryWeb does not contend that the '823 patent contains any lexicography or disavowal that would narrow the plain meaning of "responsive to," *see* Bl.Br. 24-28, that alone shows why its construction is wrong. *See Sisvel Int'l S.A. v. Sierra Wireless, Inc.*, 81 F.4th 1231, 1236 (Fed. Cir. 2023).

MemoryWeb incorrectly asserts (Bl.Br. 15, 25) that Samsung's construction

requires only that the second event happen "subsequent to" the first event. As Samsung and Dr. Greenspun explained, the second even must happen "'subsequent to' the first event ***based on a combination of user interaction and software implementation***." Appx4012 (citing Appx4587 (42:21-44:22); Appx4672 (108:20-109:12); Appx4039 (¶ 6)). Samsung never contended that "responsive to" requires ***only*** a simple temporal relationship where the second event happens after the first event. Rather, Samsung's construction further requires that "a combination of user interaction and software implementation" is the ***cause*** of this temporal relationship. *See id.* Thus, Samsung's construction does not give "responsive to" the same meaning as "subsequent to," and MemoryWeb's claim differentiation arguments (Bl.Br. 25-26) are inapposite.

MemoryWeb also mischaracterizes (Bl.Br. 26-27) Dr. Greenspun's testimony. Dr. Greenspun testified that, even in MemoryWeb's hypothetical—where selecting the "People" tab is the first event, selecting a thumbnail in the "people view" is the second event, and displaying the person view is the third event—the third event ***could*** be described as "responsive to" the first event. Appx4887 (99:21-100:10) ("Q. . . is the third event responsive to the first event? A. . . . So if you wanted to say that that view was responsive to the first event, you wouldn't be wrong."). Dr. Greenspun's testimony supports Samsung's position

that additional user action between two events does not preclude the second event being "responsive to" the first event.

In any event, the '823 patent itself establishes that MemoryWeb's construction is too restrictive. The term "responsive to" is not used in only the "location view" limitation. Claim 1 of the '823 patent also recites "responsive to an input that is indicative of a selection associated with the first location, causing a first set of digital files to be displayed on the interface, each digital file in the first set of digital files being associated with the first location." Appx178 (35:44-48). And MemoryWeb's own expert, Dr. Glenn Reinman, admitted that "causing a first set of digital files to be displayed on the interface" would still be "responsive to" the input associated with the selection of the first location, even where additional user actions such as "panning or scrolling" were required. Appx4039-4040 (¶¶ 7-8); *see also* Appx4179-4180 (48:25-49:19); Appx4252-4254; Appx4248-4249; Appx4274; Appx4278-4279; Appx4457-4458.

The '823 patent also discloses an embodiment shown in Figure 32 where an interface with an "items per page button" controls the number of photos shown at one time to a user in "people view" requiring a user to click additional selections or a button to see the full set of photos.

FIG. 32




Appx4040 (citing Appx171 (22:38-40); Appx142 (Fig. 32)). Similarly, Figure 6 shows another example of a "people view" showing arrows that, upon selection, display additional thumbnails of people including in the "people view." Appx4040 (citing Appx163 (6:20-26); Appx116 (Fig. 6)). Figure 13 shows "another example of a 'people view' that includes a scroll bar and shows +,- controls that display/hide names of people included in the people view." Appx4041 (citing Appx163 (6:54-61); Appx123 (Fig. 13)). These disclosures, which contemplate additional user action while still satisfying the "responsive to" limitation, show that "responsive to" does not preclude additional user actions, as MemoryWeb argues.

Further, by seeking to preclude additional user actions, MemoryWeb seeks a construction of "responsive to" that adds a negative limitation, beyond a simple cause-and-effect relationship, to the claim. "Negative limitations added during claim construction must find support either in the specification or the prosecution history." *Eko Brands, LLC v. Adrian Rivera Maynez Enters.*, 946 F.3d 1367, 1381

(Fed. Cir. 2020). MemoryWeb does not argue that anything in the specification or the prosecution history supports the negative limitation it seeks. Nor could it. Outside of the claims, the term "responsive to" appears only three times, none of which provides any support for precluding all potential additional actions between events. *See* Appx105 (Abstract); Appx161 (2:12, 2:29). In fact, in all three of these instances, the specification recites "automatically" searching for digital files "responsive to" receiving the instruction. *Id.* This discussion further confirms that the claims—which are not limited to "automatic[]" searching and instead recite "responsive to," alone—do not preclude additional user inputs. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) (noting, similarly, that the term "'steel baffles' . . . strongly implies that the term 'baffles' does not inherently mean objects made of steel"). As such, nothing in the '823 patent precludes additional user activity. Indeed, as discussed above, embodiments of the '823 patent permit such activity.

Finally, reading a negative limitation precluding additional user actions into the challenged claims would be particularly inappropriate given the open-ended transitional phrase "comprising," which indicates that, "absent some special circumstance or estoppel which excludes the additional factor," the claim does not preclude "the presence of elements or steps in addition to those specifically recited

in the claim." *Vivid Techs., Inc. v. Am. Sci. Eng'g, Inc.*, 200 F.3d 795, 811 (Fed. Cir. 1999).

Because MemoryWeb's arguments on appeal all require the Court to adopt its erroneous construction of "responsive to," the Court can dispose of MemoryWeb's appeal by rejecting MemoryWeb's construction.

### B. The Prior Art Satisfies the Correct Construction

There is no dispute that the prior art satisfies Samsung's plain-meaning interpretation of "responsive to." Samsung showed that, under MemoryWeb's incorrect view that iPhoto '09 ***always*** defaulted to the World view after selecting the "Places" tab ("second input"), a user would at most have to click once more on the "Browser View button" to switch to the Browser view ("locations view"). *See* Appx4023 (arguing that under Samsung's claim construction, even if "going from the search-filter view in the sequence above to the locations view requires two separate clicks . . . , the display of the locations view is nonetheless 'responsive to' the selection of the 'Places' tab in the search-filter view"). Under the proper construction of "responsive to" that permits additional action, iPhoto '09 meets the disputed limitation despite the additional click of the "Browser View button." Appx4023-4024.

Further, because the Board found that iPhoto '09 meets the limitation even under MemoryWeb's "more restrictive view of this term," no additional

factfinding is needed to conclude that iPhoto ’09 meets this limitation under the correct construction of “responsive to.” Appx74-75. Indeed, MemoryWeb did not dispute obviousness under Samsung’s construction below, instead relying solely on its claim construction to argue iPhoto ’09, as described by Pogue and Engst, fails to disclose the “responsive to” limitation. *See* Appx3530-3531 (arguing that iPhoto ’09 requires selecting the “Places” tab within the search-filter view, necessarily displaying the locations “map view,” and further requires selecting the “Browser View button” to display the claimed “locations view”). Because the Board’s existing findings and undisputed facts establish obviousness under Samsung’s construction, this Court can affirm by rejecting MemoryWeb’s construction. *See Click-To-Call Techs.*, 899 F.3d at 1336.

## V. A Remand Is Required Even Under MemoryWeb’s Narrow Interpretations of the Claims and the Prior Art

Even if the Court were to agree with MemoryWeb’s construction of “responsive to” and somehow hold that the inherency doctrine applies, a remand would be required for the Board to assess obviousness under the new construction. *See, e.g., Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1045 (Fed. Cir. 2017) (remanding so the PTAB could make the requisite factual findings or provide the attendant explanation).

Under MemoryWeb’s cramped reading of its claims and the prior art, its arguments at most establish that there is one “difference[] between the prior art and

the claims at issue," *see Graham*, 383 U.S. at 18, namely using two clicks instead of one to display the locations view. Even if that were the case, it remains to be decided whether that difference is "such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." *KSR*, 550 U.S. at 399. Because the Board could conclude that a one-click implementation would have been a "predictable variation" on a two-click implementation to a skilled artisan with at least a "year of experience designing user interfaces for applications such as photo organization systems" in 2011, Appx11 (citing Appx318), the Court would need to remand for the Board to assess obviousness in the first instance under MemoryWeb's construction.

## **CONCLUSION**

For all these reasons, the Court should affirm the Board's judgment.

Dated: August 9, 2024

Respectfully submitted,

*/s/ Christopher Dryer*

Lauren A. Degnan
Michael J. McKeon
Christopher Dryer
Irene Hwang
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, S.W., Suite 1000
Washington, DC 20024
Telephone: (202) 783-5070

Timothy Rawson
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: (858) 678-4378

***Attorneys for Appellee***
***Samsung Electronics Co., Ltd.***

## CERTIFICATE OF SERVICE AND FILING

I certify that on August 14, 2024, I electronically filed the foregoing **CORRECTED RESPONSE BRIEF** of appellee using the Court's CM/ECF filing system. Counsel for appellant were electronically served by and through the Court's CM/ECF filing system per Fed. R. App. P. 25 and Fed. Cir. R. 25(e).

*/s/ Christopher Dryer*
Christopher Dryer

## CERTIFICATE OF COMPLIANCE

The **CORRECTED RESPONSE BRIEF** of appellee is submitted in accordance with the type-volume limitation of Fed. Cir. R. 32(b). The brief contains 8,378 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2). This brief has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 in Times New Roman, 14 Point.

Dated: August 9, 2024

*/s/ Christopher Dryer*
Christopher Dryer